(70 Misc. Rep. 587.)

PEOPLE ex rel. FIORE v. CLEMENT, State Excise Com'r, et al.

(Supreme Court, Special Term, Onondaga County. December 10, 1910.)

1. INTOXICATING LIQUORS (§ 103*)—LIQUOR TAX CERTIFICATES—TRANSFER—
   STATUTES.
   The holder of a liquor tax certificate, which designated a place for trafficking in liquors, assigned the certificate to a creditor as collateral security, and then sold the business and stock to a buyer, who obtained a new certificate in his own name to traffic in liquors at such place. Subsequently the holder assigned his certificate to an assignee, who applied for a transfer of the certificate from the place originally designated to another place. Held, that under Laws 1910, c. 494, limiting the number of liquor tax certificates, according to the population, and authorizing the transfers of certificates from premises named therein, if abandoned, to other premises, the transfer was properly refused, unless the traffic at the original premises had entirely ceased.
   [Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 103.*]

2. INTOXICATING LIQUORS (§ 103*)—LIQUOR TAX CERTIFICATES — ASSIGNMENT
   AS COLLATERAL SECURITY.
   An assignee of a liquor tax certificate as collateral security for a loan made to the holder has a mere chose in action, entitling him to a legal rebate on the cancellation of the certificate.
   [Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 103.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. INTOXICATING LIQUORS (§ 103*)—LIQUOR TAX CERTIFICATES — RIGHTS AC-
    QUIRED.
      One obtaining a liquor tax certificate, permitting him to traffic in
    liquor at a designated place, obtains merely a personal privilege, entitling
    him to traffic in liquor at the designated place in the manner provided
    by law, and the right is not transferable, except on the approval of the
    public authorities and on the statutory conditions.
      [Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 103.*]

Certiorari by the People, on the relation of Frank Fiore, against
Maynard N. Clement, Commissioner of Excise, and others, to review
the acts of the Commissioner of Excise in refusing to file a notice of
abandonment and designating another place for trafficking in liquors
under a liquor tax certificate.    Determination affirmed.

Cregg Bros. & Rulison, for plaintiff.
Thomas F. Carmody, Atty. Gen., for defendants.

MERRELL, J.    This is a proceeding to review the action of the
Commissioner of Excise of the state of New York in refusing to file
a notice of abandonment of No. 921 Milton avenue, in the village of
Solvay, N. Y., and designating No. 205 Cogswell avenue, in said vil-
lage, for trafficking in liquors under liquor tax certificate No. 18,830,
heretofore issued to one Luigi Di Biasi, and in refusing to grant a
transfer of said liquor tax certificate from No. 921 Milton avenue to
No. 205 Cogswell avenue in said village of Solvay, as requested by
the relator in his application to the commissioner on the 7th day of
September, 1910.
  The facts are substantially as follows:
  On September 28, 1909, what is known as a subdivision 1 liquor
tax certificate was issued to Luigi Di Biasi to traffic in liquors on the
premises known as No. 921 Milton avenue, in the village of Solvay,
N. Y., for the year commencing October 1, 1909, and terminating on
September 30, 1910.    The certificate was issued under section 8, subd.
1, of the liquor tax law.    Di Biasi trafficked in liquor on said premises
until about June 1, 1910, when he sold his business and stock to An-
tonio Fabrizzio.    In the meantime he had assigned certificate No. 18,-
830 to Thomas Ryan's Consumers' Brewing Company as collateral se-
curity for money loaned.    The assignment contained a power of at-
torney, under which several applications were made and transactions
had without any questions being raised as to the authority of the
Thomas Ryan's Consumers' Brewing Company, and such authority is
not questioned in this proceeding.    On the 7th day of June, 1910, upon
due application therefor, Antonio Fabrizzio took out a certificate in
his own name to traffic in liquors at No. 921 Milton avenue, Solvay,
N. Y., under section 8, subd. 1, of the liquor tax law; his certificate
being No. 18,896.    Immediately Fabrizzio assigned his certificate to
Bartels Brewing Company, this assignment also containing a power
of attorney, and no question is raised as to the authority of that com-
pany to execute the applications and documents included in the return
of the Commissioner of Excise.    Neither the assignment to Thomas
Ryan's Consumers' Brewing Company nor that to Bartels Brewing

Company conveyed the right to traffic in liquor as provided in the liquor tax law, but such assignments were made simply as collateral security for moneys loaned on other indebtedness of the assignors to the assignees.

On the 25th of June Fabrizzio duly transferred his certificate to Joseph Comando, who paid the tax on the transfer and thereafter trafficked in liquors as permitted by the liquor tax law at No. 921 Milton avenue. On September 7, 1910, certificate No. 18,830, theretofore issued to Di Biasi, was transferred to one Frank Fiore upon the application of Di Biasi through his said attorney, the Thomas Ryan's Consumers' Brewing Company, and the tax on the transfer was paid. It does not appear that at the time of the application for the transfer of certificate No. 18,830 either Di Biasi, Fiore, or the Thomas Ryan's Consumers' Brewing. Company had any property right in or right to the possession of the premises No. 921 Milton avenue. On the same day, September 7th, the relator, Frank Fiore, presented to the Special Deputy Commissioner of Excise for Onondaga County a petition to transfer liquor tax certificate No. 18,830 from 921 Milton avenue to premises at No. 205 Cogswell avenue, Solvay, N. Y. The petition was accompanied by a notice of abandonment, as holder of said liquor tax certificate No. 18,830, of traffic in liquors at No. 921 Milton avenue, and the same was executed by Frank Fiore and consented to by the Thomas Ryan's Consumers' Brewing Company, as provided by section 8, subd. 9, of the liquor tax law, as amended by the Legislature of 1910. The Special Deputy Commissioner of Excise refused to file the notice of abandonment and to transfer the certificate as requested, and this proceeding is instituted to review the action of the commissioner and his reasons for the refusal.

The relator claims that, on account of his being the holder of liquor tax certificate No. 18,830, he was entitled under the statute to have the same transferred to No. 205 Cogswell avenue upon the filing of his petition therefor and notice of abandonment of No. 921 Milton avenue so far as said certificate was concerned. The Commissioner of Excise contends that as the filing of the notice and petition worked no actual abandonment of No. 921 Milton avenue, even though the petition were granted, that the relator had not brought himself within the statute, the intent of which is to accomplish an actual abandonment, until he filed a notice of abandonment duly executed by Joseph Comando and his assignee. There is no statute which forbade the issuance of the two liquor tax certificates for trafficking in liquor upon the same premises at the time the respective certificates No. 18,830 and No. 18,896 were issued, and for the purposes of this proceeding it will be assumed that both certificates were duly issued in the first instance. The question, then, is: What right, if any, did the relator have on the 7th day of September, 1910, to have certificate No. 18,-830 transferred from No. 921 Milton avenue to No. 205 Cogswell avenue upon the presentation of the petition and notice and consent set forth in the return?

On the 14th day of April, 1910, the so-called "Ratio Bill" became a law, being chapter 494 of the Laws of 1910. Among other amend-

ments to the liquor tax law, subdivision 9 was added to section 8, and is, in part, as follows:

"No liquor tax certificate shall hereafter be issued for traffic in liquors, under the provisions of subdivision one of this section, for any premises in any town, village, borough or city, unless or until the ratio of population therein, to the number of certificates issued under the provisions of said subdivision one, shall be greater than seven·hundred and fifty to one, and then only pursuant to the provisions of this subdivision; but this prohibition shall not apply to any premises in which such traffic in liquors was lawfully carried on at some time within one year immediately preceding the passage of this act," etc.

The subdivision then provides for the transfer of a certificate· from one premises to another in the following language:

"Provided, however, that at any time during the unexpired term of any liquor tax certificate issued for traffic in liquors under the provisions of subdivision one of this section in any premises in which such traffic may lawfully be carried on, a notice stating that such traffic in liquors is abandoned at the premises named in such certificate may be filed with the county treasurer or special deputy commissioner of excise of the county or borough in which the certificated premises are located, which notice shall also particularly describe some other premises in which it is intended to carry on such traffic, which premises shall be situated in the same city, borough, village or town as that in which the abandoned premises are located."

It will thus be seen that the Legislature undoubtedly intended that the traffic at the abandoned premises should entirely cease rather than that the traffic under any particular certificate ·should end. Any other interpretation would, it seems to me, nullify the intention of the statute to restrict the issuance of liquor tax certificates, excepting upon the ratio of 750·to 1. Such notices, referred to in the provision of the statute last above quoted, are required to be in writing, and signed by the holder and by any and every person to whom he has transferred any interest in the certificate.

After providing for both the trafficking under the notice and at the premises therein mentioned, subdivision 9 further provides:

"Except in a case where such notice becomes null and void as aforesaid, no liquor tax certificate for traffic in liquors under the provisions of subdivision one of this section shall thereafter be issued for, and it shall be unlawful to so traffic in liquors in the premises described in such notice as the premises in which the traffic in liquors has been abandoned."

It is very clear to me that the intent of the Legislature in enacting subdivision 9 was to prohibit the opening of additional resorts for the trafficking in liquors where on the 14th day of June, 1910, such places were equal to or in excess of the required ratio of one to seven hundred and fifty population. In the village of Solvay that ratio was exceeded on the 14th day of June, 1910.

It is also clear to me that the Legislature intended that, where the place of traffic was changed as provided by statute, the original place should be actually .abandoned, and the law clearly contemplated the filing of a notice by all persons having a right to traffic in liquors at the original premises under a liquor tax certificate. On the 7th day of September, 1910, Joseph Comando had a right to traffic in liquors at No. 921 Milton avenue under certificate No. 18,896. His certificate

had been assigned as collateral for money loaned by Bartels Brewing Company; so that, before No. 921 Milton avenue could be declared abandoned, it was necessary for Comando to file a notice thereof, accompanied by the consent of Bartels Brewing Company.

It is claimed that, on account of the relator being the certificate holder, he was by right entitled to the transfer of such certificate to No. 205 Cogswell avenue, but prior to June 14, 1910, Di Biasi, the original holder, had sold out his business at No. 921 Milton avenue, had taken down his certificate from the premises, and, so far as appears, neither Di Biasi nor the relator had possession or any right of occupation thereof at any time thereafter. He therefore had nothing to abandon in fact or law when he tendered his notice on September 7th, within the spirit of the statute, except a naked right to there traffic, in case he obtained possession. After his sale to Antonio Fabrizzio, Di Biasi and his assignee, Thomas Ryan's Consumers' Brewing Company, did not have a property right in the certificate. As to the latter, it was a mere chose in action, entitling the assignee to the legal rebate upon its cancellation. As to the former, it was a personal privilege, entitling him to traffic in liquor at the place in the manner and thereunder as by law provided. That right or privilege was not transferable, except with the approval of the authorities, and upon the conditions prescribed by statute. The relator by reason of the transfer to him gained no greater right or privilege than the assignor possessed. Had he leased or obtained possession of No. 921 Milton avenue he could, no doubt, have trafficked in liquor there under his certificate. This he did not do, and, even if he had, the premises could not have been declared abandoned under the statute until the proper notices had been filed by the holders of all certificates permitting the trafficking in liquor on said premises. The personal right or privilege of one certificate holder could not be cut off or abridged by the filing of notice of abandonment by the other.

Nor can the relator complain it was not the fault of the public that his predecessor relinquished possession of No. 921 Milton avenue. At that time certificate No. 18,830 could have been surrendered and the rebate claimed thereunder secured. On the 7th day of September the relator had no right, contractual or otherwise, to the transfer claimed, unless he could bring himself within the statute. This he did not do, for he failed to file notices of abandonment from all certificate holders claiming the right to traffic in liquors at No. 921 Milton avenue. He was therefore not entitled to a transfer to No. 205 Cogswell avenue. Indeed, had such a transfer been granted, it would have been directly contrary to the statute as it existed at the time of the transfer. The effect would have been to increase by one the number of places allowed for trafficking in liquor already obtaining in the village of Solvay, where the ratio of 1 to 750 was already exceeded.

I therefore conclude that the Commissioner of Excise was entirely justified by his action in the premises, and that the relief asked for by the relator must be denied.